## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company, MSPA CLAIMS I, LLC, a Florida limited liability company, and Series PMPI, a designated series of MAO-MSO Recovery II, LLC, a Delaware series limited liability company, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARING VOICE COALITION, INC. AND UNITED THERAPEUTICS CORPORATION,<br><br>Defendants. | Case No. 20-cv-11418 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED THERAPEUTICS CORPORATION'S MOTION TO TRANSFER VENUE TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     RELEVANT FACTS ................................................................................................ 3

III.    LEGAL STANDARD ............................................................................................... 7

IV.     ARGUMENT ............................................................................................................ 8

        A.      Venue Is Proper In The Southern District Of Florida ............................................ 8

        B.      Convenience And The Interests of Justice Favor Transferring This Case
                To The Southern District Of Florida ...................................................................... 8

                1.      Plaintiffs Already Sued United Therapeutics On These Same
                        Matters In Florida, And Their Choice of Forum Here Does Not
                        Merit Deference ........................................................................................... 9

                2.      Witnesses and Documents Are More Accessible In Florida .................... 11

                3.      Questions Of Florida Law Will Predominate In This Case ...................... 15

                4.      This Case Has a Weak Connection To Massachusetts, Meaning
                        Florida Has The Greatest Interest In This Dispute .................................. 16

V.      CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avci v. Brennan*, 232 F. Supp. 3d 216 (D. Mass. 2017) ................................................................. 7

*BES Enters., Inc. v. Natanzon*, 2006 WL 8458178 (D. Mass. Mar. 30, 2006) ............................ 11

*Bowen v. Elanes New Hampshire Holdings*, LLC, 166 F. Supp. 3d 104
(D. Mass. 2015)........................................................................................................................... 11

*Braintree Labs., Inc. v. Bedrock Logistics, LLC*, 2016 WL 7173755
(D. Mass. Dec. 8, 2016) ............................................................................................... 12, 13, 14

*Carr v. Bombardier Aerospace Corp.*, No. 10-MC-60917, 2010 WL 2220336
(S.D. Fla. June 3, 2010) ............................................................................................................... 2

*Cervantes v. CRST Int'l, Inc.*, 2020 WL 4506169 (D. Mass. Aug. 5, 2020) ................................. 7

*Grp.-A Autosports, Inc. v. Billman*, 2014 WL 3500468 (D. Mass. July 9, 2014).......................... 7

*Hyde & Hyde, Inc. v. Mount Franklin Foods, L.L.C.*, 523 F. App'x 301
(5th Cir. 2013)............................................................................................................................. 15

*IMS Glob. Learning Consortium, Inc. v. Sch. Interoperability Framework Ass'n*,
2018 WL 662479 (D. Mass. Feb. 1, 2018) ............................................................................... 16

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991).............................................................. 15

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787 (Mass. 2003) .............. 16

*Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 1994 WL 707133
(D. Mass. Dec. 6, 1994) ............................................................................................................. 14

*MAO-MSO Recovery et al., v. Mercury General*, 2019 WL 7546300
(C.D. Cal. Apr. 1, 2019).............................................................................................................. 15

*MAO-MSO Recovery II LLC, et al. v. Mercury General Corporation*,
No. 1:19-mc-91176-ADB (D. Mass., Sept. 24, 2020) ............................................................... 13

*MAO-MSO Recovery II, LLC v. Government Employees Insurance Co. (GEICO)*,
Case Nos. 17-cv-00711, 17-cv-00964, 2018 WL 999920 (D. Md. Feb. 21, 2018) ................. 12

*Mesia v. Fla. Agr. and Mech. Univ. Sch. of Law*, 605 F. Supp. 2d 1230
(M.D. Fla. 2009) ........................................................................................................................... 2

*MSP Recovery Claims, Series LLC et al v. National Liability & Fire Ins. Co.*,
3:18CV01827 (D. Conn. filed Nov. 6, 2018) ............................................................................ 12

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305
(11th Cir. 2020)......................................................................................................................... 4

*MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18 CIV. 8036 (AT),
2020 WL 91540 (S.D.N.Y. Jan. 8, 2020) ................................................................................ 12

*MSP Recovery Claims, Series, LLC v. United Therapeutics Corporation*,
No. 18-cv-24398-CMA, (S.D. Fla. Oct. 23, 2018) ...................................................... 2, 3, 9, 16

*MSPA Claims I, LLC v. Infinity Prop. & Cas. Grp.*, 374 F. Supp. 3d 1154
(N.D. Ala. 2019) ...................................................................................................................... 12

*Nat. Union Fire Ins. Co. of Pittsburgh, Pa, v. Beasley*, 1987 WL 9186
(S.D.N.Y. Apr. 1, 1987)........................................................................................................... 17

*Peterson v. Burke*, 433 F. Supp. 3d 212 (D. Mass. 2020).............................................................. 10

*Princess House, Inc. v. Lindsey*, 136 F.R.D. 16 (D. Mass. 1991) ........................................... 12, 13

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).................................................................... 7

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)......................................... 7, 17

*United States ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434
(D. Mass. 2007).......................................................................................................... 7, 9, 11, 13

*Wadhams v. Am. Fed'n of Teachers*, 2020 WL 3129480, at *2
(D. Mass. June 12, 2020) ....................................................................................................... 7, 8

*Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336 (D. Mass. 1990)................................... 16

**Statutes**

28 U.S.C. § 1391(b) ..................................................................................................................... 7, 8

28 U.S.C. § 1404(a) ............................................................................................................... 1, 3, 7, 8

Mass. Gen. Laws ch. 93A, § 11 ..................................................................................................... 16

Mass. Gen. Laws ch. 93A, § 1(a)................................................................................................... 16

**Other Authorities**

Carolina Bolado, *11th Circ. OKs Medicare Providers' Suits Against Insurers*, LAW360.COM
(Sept. 4, 2020)............................................................................................................................ 4

iv

MSP Recovery, *About Us*, WWW.MSPRECOVERY.COM, https://www.msprecovery.com/about-us/ (last visited Oct. 23, 2020)............................................................................................................. 4

This case concerns claims by Florida-based Plaintiffs using purported assignments from primarily Florida-based health care entities, involving Florida-based witnesses. Pursuant to 28 U.S.C. § 1404(a), Defendant United Therapeutics Corporation ("United Therapeutics") respectfully moves the Court for an order transferring this case to the U.S. District Court for the Southern District of Florida.[1]

## I.      INTRODUCTION

The Southern District of Florida—not this District—is the most appropriate venue for this case. This is fundamentally a Florida-based dispute, as evidenced by the fact that these very same Florida-based Plaintiffs *previously sued* United Therapeutics and Caring Voice Coalition ("CVC") in the Southern District of Florida on this very same subject matter. The factors this Court looks to under the transfer statute, 28 U.S.C. § 1404(a), also favor transfer: Florida is more convenient for the substantial number of non-party witnesses Plaintiffs have put at issue, Florida law will predominate where state-law questions arise, and United Therapeutics has a relevant office and potential witnesses and records located in Florida, with none located in Massachusetts.

Plaintiffs, meanwhile, are Florida entities that were formed solely to file lawsuits and have no apparent nexus to Massachusetts. Their business is to obtain "assignments" of certain Medicare-related legal claims from health care entities and then use those assignments to pursue litigation against insurance companies and, as in this case, pharmaceutical manufacturers. In this case, Plaintiffs seek to use alleged assignments from 27 Medicare Advantage and other organizations—only one of which is located in Massachusetts—to assert claims against United

---

[1]      Pursuant to Local Rule 7.1, counsel for United Therapeutics certify that they have conferred in good faith with counsel for Plaintiffs regarding this Motion, and that Plaintiffs oppose the relief sought herein. Plaintiffs' counsel also reported that Defendant Caring Voice Coalition has not been served with process in this case, but counsel was not willing to set a later briefing schedule for this Motion and Defendants' response that would provide more certainty as to Caring Voice Coalition's status in this case.

Therapeutics under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and miscellaneous state laws. The allegations piggyback off a December 2017 settlement between United Therapeutics and the Department of Justice ("DOJ") resolving allegations by the DOJ that United Therapeutics' donations to patient-assistance charity CVC improperly influenced patients to take United Therapeutics drugs. The DOJ did not allege RICO violations.

In September 2018, ten months after the DOJ settlement, Plaintiffs first filed a complaint in Florida state court in Miami-Dade County for a "pure bill of discovery," alleging, as here, that their Florida-based assignors—including 14 of the same Medicare Advantage and other organizations in this case—"have certain civil claims against" United Therapeutics and CVC related to the DOJ settlement, and that these "cause[s] of action accrued in Miami-Dade County, Florida." ECF No. 1, Notice of Removal (State Compl.), *MSP Recovery Claims Series, LLC v. United Therapeutics Corp.*, No. 18-cv-24398-CMA, Ex. A ¶¶ 49, 53, 66 (S.D. Fla. Oct. 23, 2018).[2] That first complaint raised essentially the same alleged theories of liability raised here—that United Therapeutics worked with CVC from 2010 to 2014 to make "donations to [CVC] and use[] CVC as a conduit to pay the copay obligations" of patients whose claims were paid by assignors. *Id.* ¶¶ 53, 54. Plaintiffs alleged that, by making those donations, United Therapeutics "eliminate[d] the price sensitivity" of patients and "induce[d]" purchases of United Therapeutics therapies. *Id.* at ¶¶ 56–57. And Plaintiffs pleaded an urgent need to conduct pre-suit discovery *in Florida* "to confirm the identity of the proper defendant and the appropriate legal theory of relief." *Id.* at ¶ 65.

United Therapeutics removed Plaintiffs' complaint to federal court in the Southern District

---

[2]    "A pure bill of discovery is an equitable remedy under state law which serves 'to obtain the disclosure of facts within the defendant's knowledge, or deeds or writings or other things in his custody, in aid of the prosecution or defense of an action pending or about to be commenced in some other court.'" *Carr v. Bombardier Aerospace Corp.*, 2010 WL 2220336, at *1 (S.D. Fla. June 3, 2010) (*citing Mesia v. Fla. Agr. and Mech. Univ. Sch. of Law*, 605 F. Supp. 2d 1230, 1232 (M.D. Fla. 2009)).

of Florida in that earlier case, and, after United Therapeutics filed a motion to dismiss, Plaintiffs voluntarily dismissed the case without prejudice.  ECF No. 49, Notice of Voluntary Dismissal Without Prejudice, *MSP Recovery Claims Series, LLC v. United Therapeutics Corporation*, No. 18-cv-24398-CMA (S.D. Fla. Nov. 16, 2018).

Two years later, Plaintiffs filed this present case in Massachusetts.  But this District, as Plaintiffs' first lawsuit demonstrates, is not the appropriate venue for Plaintiffs' claims.  None of the parties is a Massachusetts resident.  Plaintiffs are Florida based.  Of the 27 assignments asserted in this complaint, 17 are from Florida-based entities, and their alleged "overpayments" occurred in Florida.  *See, e.g.*, Compl. ¶¶ 23, 89, 90.  A significant portion of the alleged misconduct Plaintiffs challenge in this case also occurred in Florida, while none of it occurred in Massachusetts.  United Therapeutics' Access Solutions and Support Team ("ASSIST"), which worked with eligible patients and referred them for charitable assistance to organizations such as CVC, is located at United Therapeutics' offices in Melbourne, Florida.  Declaration of Kathleen Gaffney ¶¶ 5–6 (hereinafter, "Gaffney Decl.").  United Therapeutics has operated its ASSIST program out of this physical location since 2012, and that office is home to many of the relevant witnesses and documents.  *See id*.  And a majority of Plaintiffs' "assignments"—the validity of which Defendants will challenge—will be governed by Florida state law.

For all of these reasons, United Therapeutics respectfully requests that the Court transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

## II.    RELEVANT FACTS

*Plaintiffs.*  Lead plaintiff MSP Recovery Claims, Series LLC ("MSP Recovery") is a Delaware limited liability company with its principal place of business in Coral Gables, Florida. *Id.* ¶ 9.  Plaintiff MSPA Claims I, LLC ("MSPA Claims") is a Florida limited liability company that shares its principal place of business with MSP Recovery.  *Id.* ¶ 10. (MSP Recovery and

3

MSPA Claims are two of at least several dozen related "MSP Recovery" entities registered in Florida, with Florida places of business and Florida-based officers).  Plaintiff Series PMPI is a Delaware "series," exclusively owned by MSP Recovery.  *See id.* ¶ 9 n.3.  Series PMPI lists offices in New Jersey, but its "citizens are members of Florida, New Jersey, and New York."  *Id.* ¶ 11.

All three plaintiff entities were formed for the purpose of pursuing litigation on behalf of Medicare Advantage organizations and related entities based on purported "assignments" of certain legal claims from those organizations.[3]  They have no other purpose.  Each is represented by "MSP Recovery Law Firm," which shares the Coral Gables, Florida office with its clients MSP Recovery and MSPA Claims.  *Id.* ¶ 9.  Plaintiffs have filed hundreds of cases in the last several years, principally in the Southern District of Florida.[4]

*Assignors.*  Seventeen of the 27 alleged assignors identified in the Complaint (the "Assignors") are likewise Florida based.  *Id.* ¶¶ 23–24.  Of the remaining, four are Puerto Rico based, and there is one each from Connecticut, Massachusetts, New York, Ohio, Pennsylvania, and Wisconsin.  Exhibits A–Q to the Declaration of Martin F. Murphy (hereinafter "Murphy Decl."), filed concurrently with this motion, list each of the Florida Assignors and its place of incorporation and principal place of business.  The Assignors—*not* Plaintiffs—are the entities that allegedly paid inflated amounts for United Therapeutics drugs and suffered harm as a result of Defendants' co-pay assistance donations, and that will thus have all of the evidence related to Plaintiffs' claims.  *See* Compl. ¶ 89 (alleging that AvMed—a Florida-based health care plan—

---

[3]    *See* MSP Recovery, *About Us*, WWW.MSPRECOVERY.COM, https://www.msprecovery.com/about-us/ (last visited Oct. 23, 2020).

[4]    The Southern District of Florida is not just a frequent venue for Plaintiffs' litigation, it is also a hospitable venue.  *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305 (11th Cir. 2020) (permitting Plaintiffs to pursue claims under Medicare Secondary Payer Act).  Plaintiffs have claimed that their victories in the Florida courts are "vindication of the legal strategy" Plaintiffs have pursued since 2014, and lead counsel for Plaintiffs called a recent Eleventh Circuit decision the "biggest victory of my legal career."  Carolina Bolado, *11th Circ. OKs Medicare Providers' Suits Against Insurers,* LAW360.COM (Sept. 4, 2020).

4

"paid $1,024,062.53 in claims for the UT Hypertension Drugs in 2018"); *id.* ¶ 90 (alleging that Family Physician Group—a Florida-based health care provider—"paid $1,345,217 in claims for the UT Hypertension Drugs in 2017").

*Defendants.*    Defendant United Therapeutics is a Delaware company that develops treatments for patients suffering from pulmonary arterial hypertension and other rare medical conditions. *See* Compl. ¶ 13. United Therapeutics has substantial offices in Maryland, *id.*, but its patient ASSIST team (the "Access Solutions and Support Team") and call center are located in Melbourne, Florida. *See* Gaffney Decl. ¶ 5. ASSIST is a United Therapeutics department established in 2012, committed to helping eligible patients obtain access to their prescribed therapies. *See id.* at ¶¶ 4–6. Its services include, among other things, conducting intake for United Therapeutics' in-house Patient Assistance Program as well as providing referrals to patient assistance programs for patients not eligible for United Therapeutics' in-house Program. *Id.* at ¶ 6. ASSIST employs 20 dedicated individuals, all located in Melbourne, and keeps records of patient and customer calls and outcomes on a server located in Florida. *Id.* at ¶¶ 8–10. Plaintiffs allege that United Therapeutics "directed" patients to CVC as part of the alleged conspiracy, *see* Compl. ¶ 7—ASSIST is the team that handles patient requests for financial assistance. And of the 20 employees currently on the ASSIST team, 13 have been with the team since 2014 or prior, during the majority of the relevant time period alleged in Plaintiffs' Complaint. *Id.*[5]

Defendant CVC is a now-defunct Idaho nonprofit corporation that helped financially indigent patients pay co-pays for life-saving drug treatments. Its former principal place of business

---

[5]    That includes Kathleen Gaffney, the Director of ASSIST Operations, Deborah Angel, the Customer Service, Intake & Inquiry Manager, five customer service and intake representatives, four reimbursement professionals (including Heather Graves, Lead Reimbursement Associate), and two quality assurance and control employees (including Cathynia Spence-Hernandez, the Manager of Quality Assurance and Control). *See* Gaffney Decl. ¶ 9.

was in Virginia.  *Id.* ¶ 14.[6]

*Alleged Conduct*.  Just like Plaintiffs' prior suit against United Therapeutics and CVC in Florida, Plaintiffs' Complaint here alleges that United Therapeutics impermissibly coordinated with CVC in making donations to CVC's charitable fund for pulmonary arterial hypertension patients.  *See, e.g.*, Compl. ¶ 5.  Plaintiffs allege that United Therapeutics made the donations to CVC to ensure that more Medicare patients covered by the Assignors would be prescribed the therapies discovered by United Therapeutics.  *See id.*

Plaintiffs allege that Medicare Advantage organizations and related entities paid inflated prices for certain treatments as a result of United Therapeutics' co-pay donations.  *See id.* ¶ 81.  Those entities—the Assignors—then purportedly assigned certain litigation rights to Plaintiffs, who claim to have standing under those assignments to bring claims against United Therapeutics and CVC for violations of RICO and state consumer protection laws in seven different states.  *See id.* ¶¶ 107–238.

*Massachusetts Allegations*.  The Complaint alleges that the DOJ's investigation of and settlement with United Therapeutics concerning donations to CVC "took place in Massachusetts and was conducted by the United States Attorneys' Office, District of Massachusetts," *id*. at ¶ 20— as part of a nationwide effort conducted by that office related to Medicare payments.  Plaintiffs also allege that a single purported Assignor (out of a total of 27, as noted above), Fallon Community Health Plan ("Fallon"), *id.* at App'x ¶ A1, "purchased the [United Therapeutics] [h]ypertension [d]rugs [at issue] in Massachusetts[,]" *id.* at ¶ 20; that "Defendants paid and/or conspired to pay co-payments for Medicare beneficiaries in Massachusetts in furtherance of their Co-payment Circumvention Enterprise[,]" *id.* ¶ 19; and that United Therapeutics and CVC

---

[6]    Again, to United Therapeutics' knowledge, CVC has not yet been served with Plaintiffs' lawsuit.

generally "transact their affairs in Massachusetts[,]" *id.* ¶ 20.

### III.    LEGAL STANDARD

Venue is proper in any federal district where a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b).  A district court has discretion under 28 U.S.C. § 1404(a) to transfer an action brought in an otherwise proper venue to any other district in which the case "might have been brought" if "convenience and the interest[s] of justice favor transfer." *Wadhams v. Am. Fed'n of Teachers*, 2020 WL 3129480, at \*2 (D. Mass. June 12, 2020) (internal quotation marks omitted); *see also, e.g.*, *Cervantes v. CRST Int'l, Inc*., 2020 WL 4506169, at \*1 (D. Mass. Aug. 5, 2020).

Courts conduct a flexible and "individualized, case-by-case consideration of convenience and fairness" to determine whether transfer is appropriate.  *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988).  Factors include "the plaintiff's choice of forum"; "the convenience of the parties"; "the convenience of witnesses and location of documents"; "the law to be applied"; "any connection between the forum and the issues"; and "the state or public interest at stake."  *Grp.-A Autosports, Inc. v. Billman*, 2014 WL 3500468, at \*2 (D. Mass. July 9, 2014).  The convenience of witnesses is "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer[.]"  *United States ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (internal quotation marks omitted).  Courts accept "plaintiff's allegations as true" in considering these factors, *Avci v. Brennan*, 232 F. Supp. 3d 216, 219 (D. Mass. 2017), but, as with any pleading issue, do not "credit conclusory allegations or draw farfetched inferences[,]" *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).[7]

---

[7]     Although United Therapeutics does not believe that Plaintiffs pleaded facts showing that a substantial part of the events occurred in Massachusetts, this motion does not challenge Plaintiffs' venue allegations but rather argues

## IV.    ARGUMENT

### A.    Venue Is Proper In The Southern District Of Florida

As a threshold matter, the Southern District of Florida is a "proper" venue under Section 1391(b) because it is where a "substantial part of the events or omissions giving rise to the claim" occurred.  28 U.S.C. § 1391(b)(2); *see, e.g.*, *Wadhams*, 2020 WL 3129480, at *2 (requiring this initial determination under 28 U.S.C. § 1404(a)).

Plaintiffs' Complaint alleges that Assignors paid inflated prices for United Therapeutics drugs because United Therapeutics made certain donations to CVC and referred patients to CVC for financial assistance.  Compl. ¶¶ 5, 7.  Plaintiffs identify three "representative" Assignors, *id.* ¶ 23, and one of those three—Interamerican Medical Center Group—is based in the Southern District of Florida.  *Id.*, App'x, ¶ A2.  Plaintiffs also provide sample "data" to show the amount of claims that certain Assignors paid, *id.* ¶¶ 89–91, and two out of the three Assignors for whom Plaintiffs provide sample data are Florida based.  *See* Murphy Decl., Exs. C, E (identifying AvMed and Family Physician Group as Florida entities).  Those representative Assignors are among the 17 Florida-based Assignors who purportedly made purchases of United Therapeutics' products, making the Southern District of Florida an appropriate venue.  *See* 28 U.S.C. § 1391(b)(2); *see also* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division *where it might have been brought* or to any district or division to which all parties have consented.") (emphasis added).

### B.    Convenience And The Interests of Justice Favor Transferring This Case To The Southern District Of Florida

The convenience of the parties and witnesses, as well as the applicable state law, the

---

that Florida would be a more convenient forum and that Section 1404 transfer is warranted.  For that reason, and because United Therapeutics accordingly is not making this Motion under Federal Rule of Civil Procedure 12(b)(3), United Therapeutics reserves its rights to move to dismiss this case on other Rule 12(b) grounds at a later time.

interests of justice, and all of the remaining factors that courts in this District consider on a motion to transfer strongly warrant transferring this case to the Southern District of Florida.

> ### 1.     Plaintiffs Already Sued United Therapeutics On These Same Matters In Florida, And Their Choice of Forum Here Does Not Merit Deference

Plaintiffs have already demonstrated that Florida was the most appropriate venue to adjudicate their claims.  Through their pure bill of discovery complaint in 2018, Plaintiffs sought to compel discovery from United Therapeutics in South Florida to support their claims.  *See generally* Notice of Removal (State Court Complaint), *MSP Recovery Claims, Series, LLC v. United Therapeutics Corporation*, No. 18-cv-24398-CMA (S.D. Fla. Oct. 23, 2018).

In that complaint, Plaintiffs alleged that their Assignors—including 14 of the same ones in this case—were all Florida-based health care entities.  *See id.*  Plaintiffs alleged that all 14 of those Assignors executed assignments "entered into under Florida law."  *Id.*  Further, they contended that the equitable powers of Florida courts were needed to compel discovery from United Therapeutics *in Florida* so that Plaintiffs could state claims against United Therapeutics via the alleged assignments.  *Id.* ¶¶ 63–66.  Plaintiffs also represented that the injuries giving rise to their "cause of action accrued in Miami-Dade County, Florida."  *Id.* ¶¶ 1, 49.

Although a plaintiff's choice of forum is typically afforded some deference, it should be given "less weight" where the forum has "no obvious connection to the case or the plaintiff is a non-resident[.]"  *See Ondis*, 480 F. Supp. 2d at 436 (citation omitted) ("[W]here the operative facts of the case have no material connection with [the district in which the case was filed], plaintiff's choice of forum carries less weight.").  Plaintiffs' decision to originally file suit in Florida demonstrates their understanding that this matter is a Florida-based dispute that will require Florida-based discovery.[8]  Indeed, any factual connection to Massachusetts is ancillary, at best,

---

[8]     Notably, Plaintiffs did not allege a *single* Massachusetts-based Assignor, nor Assignors from any other state

when weighed against the Florida connections.

Neither Plaintiffs nor Defendants are residents of Massachusetts.  *See Peterson v. Burke*, 433 F. Supp. 3d 212, 219 (D. Mass. 2020) (convenience factor weighed in favor of transfer where none of the parties resided in Massachusetts).  Two plaintiffs have their principal place of business in Coral Gables, Florida (within the Southern District of Florida).  The third plaintiff is a wholly owned subsidiary of the first two, comprised of at least one Florida-based constituent entity.  *See* Compl. ¶¶ 9–11.  All of Plaintiffs' attorneys are also based in Florida.  Florida is home to the 20 United Therapeutics patient ASSIST employees who interact directly with patients, as well as the location of charitable assistance and patient referral documentation relevant to the conduct underlying this action.  Compl. ¶ 7; Gaffney Decl. ¶¶ 8–10.[9]

Meanwhile, any nexus to *this* District is minimal: no likely witnesses, documents, or operative laws have any material connection to this judicial district.  At best, Plaintiffs have alleged that the District of Massachusetts is a "proper" venue because United Therapeutics transacts business in Massachusetts, and one Massachusetts-based Assignor (Fallon) allegedly paid for claims.  *See* Compl. ¶ 20.  But the overwhelming factual nexus between United Therapeutics' conduct and the allegedly injurious overpayments made by the Assignors (for which Plaintiffs seek recovery) occurred in the Southern District of Florida.

Plaintiffs refer to United Therapeutics' earlier 2017 settlement with the DOJ as the "nexus" between this matter and Massachusetts.  But that "nexus" is illusory.  United Therapeutics' 2017 settlement did not involve Massachusetts-based conduct.  Indeed, the settlement agreement makes

---

except for Florida, in their pure bill of discovery complaint.

[9]     As of December 3, 2020, lead plaintiff MSP Recovery Claims, Series LLC has 30 open cases pending in the Southern District of Florida, 18 of which it has filed since October 1, 2020.  Plaintiffs cannot credibly contest that the Southern District of Florida is the more convenient venue for the parties.

no reference to alleged conduct in Massachusetts, nor was there any litigation, at all, in that matter. *See* Compl., Ex. A (Settlement Agreement). Under the False Claims Act, that DOJ investigation could have been conducted by any United States Attorneys' Office in the country, so long as United Therapeutic made one sale there. *See* 31 U.S.C. § 3732(a). Regardless, the DOJ is not a party to *this* case and is not a witness. Plaintiffs' private RICO treble damages suit on behalf of Florida-based Assignors—whose purported assignments to Plaintiffs are governed by Florida law, and whose allegedly assigned injuries arose in Florida—is not convenient to litigate in this District simply because the DOJ venued an investigation here.

In light of these facts, Plaintiffs' choice should "'give way to other overriding considerations'" warranting transfer to Florida. *Bowen v. Elanes New Hampshire Holdings, LLC,* 166 F. Supp. 3d 104, 108–09 (D. Mass. 2015) (finding transfer "especially" appropriate because "'the forum has no obvious connection to the case'" and "the plaintiff[s are] not . . . forum resident[s]") (citations omitted); *see also BES Enters., Inc. v. Natanzon*, 2006 WL 8458178, at \*1 (D. Mass. Mar. 30, 2006) (overriding plaintiff's choice of venue and approving transfer under section 1404(a) where "other cases . . . related to [Defendant] and its business practices" had been brought in the other district, a "significant amount of the evidence in the case is also located in that jurisdiction," and where Defendant "specifically identified . . . witnesses it would call to testify, all of whom" were located in the other district).

### 2. Witnesses And Documents Are More Accessible In Florida

The "most important factor" for transfer—the convenience of potential witnesses, *Ondis*, 480 F. Supp. 2d at 436—strongly favors the Southern District of Florida as well, especially in light of the evidence that must be gathered and used with those witnesses and in the case more generally.

*Witnesses.* Crucial here is that "[c]ourts 'particularly' consider the convenience of 'nonparty witnesses important to the resolution of the case.'" *Braintree Labs., Inc. v. Bedrock*

*Logistics, LLC*, 2016 WL 7173755, at *3 (D. Mass. Dec. 8, 2016) (citation omitted). Defendants anticipate that several of the most key and contested issues will relate to the validity of Plaintiffs' assignments, as well as the number and value of any payments the underlying Assignors allegedly made for United Therapeutics' products. Litigation over the validity of assignments, and whether the Assignors actually paid any claims for Defendant's products, are recurring issues in Plaintiffs' lawsuits.[10]

Specifically, United Therapeutics plans to depose witnesses from each Assignor (the vast majority of which are in Florida[11]) to testify about the validity of their alleged assignment of claims to Plaintiffs and whether or not the Assignor, in fact, paid *any* claims for United Therapeutics drugs during the relevant time. *See Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) ("A party seeking transfer on this basis must . . . specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail."). To the extent there are relevant witnesses from Plaintiffs on these issues, their Southern District of Florida home base is the most appropriate for them. The only witness conceivably from Massachusetts would be a single witness from Fallon, compared to the dozens of witnesses from Florida.[12]

---

[10]   *See, e.g.*, *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18 CIV. 8036 (AT), 2020 WL 91540 (S.D.N.Y. Jan. 8, 2020) (dismissing claims based on defects in alleged assignments); *MSP Recovery Claims, Series LLC et al v. National Liability & Fire Ins. Co.*, No. 3:18CV01827 (D. Conn. filed Nov. 6, 2018) (same); *MSPA Claims I, LLC v. Infinity Prop. & Cas. Grp.*, 374 F. Supp. 3d 1154, 1160 (N.D. Ala. 2019) (same); *MAO-MSO Recovery II, LLC v. Government Employees Insurance Co. (GEICO)*, Nos. 17-cv-00711, 17-cv-00964, 2018 WL 999920 (D. Md. Feb. 21, 2018) (accepting assignment in considering a motion to dismiss, but noting that the validity and scope of the assignment may be challenged on summary judgment).

[11]   *See* Murphy Decl. ¶ 3 (listing Assignor locations). Four of the remaining 10 assignors are from Puerto Rico. The Southern District of Florida would also be the more convenient venue for witnesses in Puerto Rico, should their participation be necessary.

[12]   These witnesses include individuals from the following Florida-based Assignors:  Interamerican Medical Center; Preferred Medical Plan Inc.; Avmed, Inc.; Broward Primary Partners, LLC; Family Physicians Group d/b/a Family Physicians of Winter Park, Inc.; Health Care Advisor Services, Inc.; Health First Health Plans, Inc.; Hygea Health Holdings; MCCI Group Holding, LLC; Medical Consultants Management, LLC; Physician Access Urgent Care Group, LLC; Professional Health Choice, Inc.; Quality Medical Care, Inc.; Risk Watchers, Inc.; Suncoast Provider Network, Inc.; University Health Care MSO, Inc.; and Verimed IPA, LLC.  *See* Compl. ¶ 23 n.4 (listing alleged Assignors); Murphy Decl. ¶ 3 (identifying Assignor locations).

The availability of key Assignor witnesses to participate in this litigation, and the efficiency of ensuring they do so, also depends on transfer to Florida. "In analyzing the convenience of the witnesses, the Court must consider not only the number of potential witnesses located in the transferor and transferee districts, but also . . . *whether they can be compelled to testify*." *Ondis*, 480 F. Supp. 2d at 437 (citation omitted; emphasis added). Because the Assignors are third parties, they would not be subject to compulsory process outside of their home jurisdictions—meaning that Defendants will be required to issue subpoenas for witnesses and documents from 17 Florida-based assignors out of a different court—the Southern District of Florida.

Should the case remain in this District, both parties would be forced to engage in massive, discovery-related satellite litigation in Southern District of Florida to secure Assignor witness participation in this case. Even then, there is significant risk Defendants will be "deprived of trial testimony from identified, out-of-state, non-party witnesses because of the absence of compulsory process." *Braintree Labs., Inc.*, 2016 WL 7173755, at \*3 (finding lack of compulsory process over witnesses a significant factor in transfer analysis); *see also Princess House*, 136 F.R.D. at 18 (citation omitted) (noting that "[c]onvenience of expected witnesses is probably the most important factor" in transfer analysis and considering "whether the witnesses can be compelled to testify"). That risk is especially high because Plaintiffs' alleged Assignors have engaged in lengthy and costly motion practice to try to avoid third-party discovery. *See, e.g.*, Memorandum and Order Transferring Action to the Central District of California, *MAO-MSO Recovery II LLC, et al. v. Mercury General Corporation*, No. 1:19-mc-91176-ADB (D. Mass., Sept. 24, 2020), ECF 14 (reflecting Fallon's attempt to evade discovery in a case pending in California and this Court's decision to transfer the issue back to the Central District of California, after multiple rounds of briefing). It will be far more efficient and fair to resolve all of these disputes within the main

13

litigation in the home District of the Assignor.

Discovery also will involve inquiry into the relationship between United Therapeutics and CVC as part of Plaintiffs' alleged co-pay assistance "conspiracy." *See, e.g.*, Compl. ¶¶ 2–7, 74, 113–135. United Therapeutics' patient assistance-related witnesses on the ASSIST team and materials are all located in Florida, which is presumably why Plaintiffs originally sued there. *See* Gaffney Decl. at ¶¶ 6, 8–10. Florida is considerably *more* convenient for Florida-based witnesses.[13] *Cf. Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.,* 1994 WL 707133, at *10 (D. Mass. Dec. 6, 1994) (finding that because "all . . . knowledgeable witnesses are located outside Massachusetts" the "location of witnesses" factor favored transfer).

<u>Documents</u>. As this Court has recognized, transfer is strongly favored as well where the majority of relevant documents are likely to be in the transferee district. *See id.* at *10 (noting that the "location of documents," like the location of witnesses, "clearly cut[s] in favor of transfer" where "all relevant documents" are located outside of Massachusetts and where most are generally located in the state to which defendants seek transfer). Many of the documents likely to be most relevant in this case—including but not limited to records confirming actual purchases by Assignors of United Therapeutics hypertension drugs, as well as other documentation to identify relevant payments by Plaintiffs' alleged Assignors—are likely to be located in Florida, where the majority of Plaintiffs' alleged Assignors are based. Indeed, in other cases, these same Florida-based Plaintiffs have asserted that they maintain a "centralized database" (the "MSP System") for "capturing, compiling, synthesizing, and funneling large volumes" of information. Report of

---

[13]     Melbourne, Florida is in the Middle District of Florida, but the Southern District of Florida is still far more geographically convenient than Massachusetts for witnesses from United Therapeutics' office there. Moreover, compulsory process is not an issue for such employees, because United Therapeutics is a party and can arrange for their participation. *Braintree Labs., Inc.*, 2016 WL 7173755, at *3 (finding compulsory process over third-party witnesses a significant factor and explaining that, by contrast, a party's "employees [are] subject to [that party's] control, and can thus testify in this court should [the party] so request").

Daniel L. Regard II, *MAO-MSO Recovery et al., v. Mercury General*, 2019 WL 7546300 (C.D. Cal. Apr. 1, 2019).  Similarly, the documents relating to the patients seeking charitable assistance from United Therapeutics and patient referrals to those charities by United Therapeutics are located in Florida.  Gaffney Decl. ¶ 10.

### 3.    Questions Of Florida Law Will Predominate In This Case

Plaintiffs' primary cause of action is based on the federal RICO statute, 18 U.S.C. § 1961, *et seq*.  *See* Compl. ¶¶ 107–238.  Federal courts are equally capable of interpreting and applying RICO, *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991) ("it is axiomatic that federal law governs questions concerning the interpretation of a federal statute"), so the court's ability to apply and interpret the RICO statute is a neutral factor when it comes to transfer.  Beyond RICO, however, questions of Florida state law will predominate in this case.

First, the validity of the assignments that purportedly authorize Plaintiffs to bring these claims is a question of contract law, which will be governed by the agreements themselves.  *See, e.g.*, *Hyde & Hyde, Inc. v. Mount Franklin Foods, L.L.C.*, 523 F. App'x 301, 305 (5th Cir. 2013) (recognizing that the validity of assignments is governed by choice-of-law provisions that "control the agreement").  One of the three "representative" assignments Plaintiffs attach to the Complaint, the Interamerican agreement, is expressly governed by Florida law.  Compl., App'x ¶ A2 ("The assignment was entered under Florida law.").  But more critically, assignment agreements with the 16 other Florida-based Assignors are entirely between Florida-based entities (Plaintiffs on the one hand, and the Assignor on the other).  Although Plaintiffs have not attached copies of these agreements to the Complaint or otherwise provided them in this case, Plaintiffs affirmatively pleaded in the prior litigation that all 14 of the Assignors that are common to both cases executed assignment agreements that were "entered into under Florida law."  *See* Notice of Removal (State Court Complaint), *MSP Recovery Claims, Series, LLC v. United Therapeutics Corporation*,

No. 18-cv-24398-CMA, (S.D. Fla. Oct. 23, 2018).

Second, Plaintiffs' grab-bag of state consumer protection claims will implicate primarily Florida law. Plaintiffs include claims from seven states, including one each from Florida and Massachusetts. *See*, *e.g.*, Compl. ¶¶ 164–73 (claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq*.). But because a large majority of the alleged Assignors are Florida based, claims based on payments those Assignors allegedly made will be governed by the Florida Deceptive and Unfair Trade Practices Act—a Florida statute with which the Southern District of Florida is more familiar. *See Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336, 337 (D. Mass. 1990) (granting a motion to transfer because the court recognized, in part, that New Hampshire law would govern in the case and federal judges in New Hampshire would therefore be more familiar with the "applicable law"). The predominance of Florida law weighs in favor of transfer.[14]

### 4.    This Case Has A Weak Connection To Massachusetts, Meaning Florida Has The Greatest Interest In This Dispute

This case's connections to Florida are strong for all of the reasons already noted, and Florida is thus the most appropriate venue. *See IMS Glob. Learning Consortium, Inc. v. Sch. Interoperability Framework Ass'n*, 2018 WL 662479, at *4 (D. Mass. Feb. 1, 2018) (finding state with "a greater connection to the issues" and underlying conduct has stronger interest in case, favoring transfer). Transfer is particularly appropriate because Plaintiffs' Massachusetts-based allegations are threadbare and conclusory, rendering Massachusetts the venue with the weaker

---

[14]    Plaintiffs' claims under the Massachusetts consumer protection law, Mass. Gen. Laws ch. 93A, § 1(a), for example, cannot reach conduct solely between Maryland-based United Therapeutics and the Florida-based Assignors, because "Chapter 93A applies only to conduct that has occurred 'primarily and substantially within the commonwealth.'" Mass. Gen. Laws ch. 93A, § 11; *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 800 (Mass. 2003) (no Chapter 93A liability when "virtually all the conduct" that "can be said to be unfair or deceptive" occurred "outside the Commonwealth.").

connection to the issues and weaker interest in the case.

Plaintiffs allege (1) that just one out of its 27 alleged Assignors—Fallon—is Massachusetts based; (2) that, because this single purported Assignor purchased an unspecified amount of United Therapeutics therapies during an unspecified time period, this case involves "substantial" events that took place in Massachusetts; and (3) that United Therapeutics and CVC generically "transact their affairs" in Massachusetts. *See* Compl. ¶ 20.

What is missing are *any* plausible allegations that United Therapeutics' conduct involving patient referrals and co-pay donations—or any other relevant conduct—took place in Massachusetts. Notably, in this RICO case, not a single predicate act or part of the conspiracy is alleged to have taken place in Massachusetts, whereas the injuries caused by the alleged predicate acts were to the Assignors, including principally the 17 Assignors in Florida. *See id*. ¶¶ 131, 135. Moreover, Plaintiffs' conclusory statement that United Therapeutics and CVC "transact their affairs" in Massachusetts is entitled to no deference, *Ticketmaster-New York, Inc.*, 26 F.3d at 203, and any connection to Massachusetts based solely on sales of United Therapeutics hypertension drugs within the Commonwealth (e.g., to Fallon) could also be said with respect to Florida, *but with much greater support*. *See Nat. Union Fire Ins. Co. of Pittsburgh, Pa, v. Beasley*, 1987 WL 9186, at \*5 (S.D.N.Y. Apr. 1, 1987) ("Where a plaintiff's chosen forum has so little relation to the material facts of the case that he may not rely on the deference ordinarily given his choice, he cannot by conclusory recitations . . . defeat a transfer motion.").

The only other connection to this District is the investigation conducted by the United States Attorneys' Office for the District of Massachusetts. *See* Compl. ¶ 20. Despite Plaintiffs' apparent interest in leveraging stigma from that settlement by filing in this District, the long-ago-completed DOJ investigation has no bearing on the venue analysis and does not alter the

17

conclusion that Florida has the much stronger connection to Plaintiffs' claims.

## V.    CONCLUSION

This suit belongs in Florida.  Plaintiffs already sued United Therapeutics and CVC in Florida based on the same underlying conduct alleged in this suit.  That prior case speaks for itself about the propriety of venue in Florida.  Moreover, the vast majority of the Assignors—where the bulk of witnesses and discovery will come from—are based in Florida; the Plaintiffs are Florida based; and United Therapeutics' patient ASSIST team and documents are in Florida.  Florida state law will be central to resolving key disputes about the validity of the assignments.  By contrast, there is no reason for this case to remain in the District of Massachusetts, which has almost no factual, legal, or logical connection to this case whatsoever.

For all of the reasons above, United Therapeutics respectfully requests that this Court grant this Motion to Transfer Venue and enter an order transferring this action to the U.S. District Court for the Southern District of Florida.  A Proposed Order is being submitted separately to the Court.

Dated: December 9, 2020

Respectfully Submitted,

/s/ *Joanna L. McDonough*
Martin F. Murphy, MA Bar No. 363250
Joanna L. McDonough, MA Bar No. 699056
FOLEY HOAG LLP
Seaport West, 155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: 617.832.1213
Fax: 617.832.7000
mmurphy@foleyhoag.com

Andrew S. Tulumello (*pro hac vice forthcoming*)
Geoffrey M. Sigler (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Fax: 202.530.9678
atulumello@gibsondunn.com

18

gsigler@gibsondunn.com

Deborah Stein (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue,
Los Angeles, CA 90071
Washington, DC 20036
Telephone: 213.229.7164
Fax: 213.229.6164
dstein@gibsondunn.com

*Attorneys for Defendant United Therapeutics Corporation*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2020, I filed the foregoing document with this Court using the CM/ECF filing system.  This system sends notifications of such filing and service to all counsel of record.

*/s/ Joanna L. McDonough*

20