UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company, MSPA CLAIMS I, LLC, a Florida limited liability company, and Series PMPI, a designated series of MAO-MSO Recovery II, LLC, a Delaware series limited liability company, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED THERAPEUTICS CORPORATION,<br><br>Defendant. | Case No. 21-cv-21317-GAYLES |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT UNITED THERAPEUTICS CORPORATION'S MOTION TO STRIKE PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**COME NOW,** Plaintiffs, MSP Recovery Claims, Series LLC; MSPA Claims I, LLC; and Series PMPI (collectively "Plaintiffs"), by and through their attorneys, and hereby submit Plaintiffs' Response in Opposition to Defendant United Therapeutics Corporation's Motion to Strike Plaintiffs' Amended Class Action Complaint and Incorporated Memorandum of Law ("Motion to Strike"). For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court *deny* Defendant's Motion to Strike in its entirety.

## INTRODUCTION

Defendant United Therapeutics Corporation's ("UT" or "Defendant") Motion to Strike seeks the drastic sanction of striking entire theories of liability, parties, and class claims based on a technicality. Plaintiffs filed their First Amended Class Action Complaint on October 15, 2021, the date set by this Court for the parties to file any motions for leave to amend the pleadings. [ECF No. 85-1]. Thus, Defendant was on notice of all of Plaintiffs' allegations and therefore suffered no harm from Plaintiffs' technical filing mishap. Nevertheless, Defendants argue that this Court should strike Plaintiffs' First Amended Complaint on the basis of "flagrant delay," "bad faith," "dilatory motive," and "prejudice" [ECF No. 99], which would leave Plaintiffs and all potential class members without redress for the harms suffered at Defendant's hand. This would be an unjust result.

Plaintiffs have, at all times, acted in good faith, with the best of motives, and with no intent to cause undue delay, despite allegations by Defendant to the contrary. Given Plaintiffs' good faith intentions, the lack of delay in apprising Defendant of Plaintiff's claims, and Plaintiffs' willingness to consent to any necessary extensions, Defendant suffered no prejudice from Plaintiffs' actions.

To illustrate the lack of harm suffered by Defendant, Plaintiffs provide this Court with a brief summary of the actions taken by the parties since this case was originally filed in July 2020 in the District of Massachusetts. Plaintiffs' conduct concretely illustrates that their conduct in this case was at all times carried out in good faith. Additionally, Plaintiffs argue that Defendant's forum shopping and dilatory tactics have done much more to delay this case than any unintended procedural infirmity on Plaintiffs' part. Accordingly, Plaintiffs respectfully request this Honorable Court to deny Defendant's Motion to Strike. [ECF No. 99].

## APPLICABLE FACTS

1. On July 27, 2020, Plaintiffs initiated the instant action, *MSP Recovery Claims. Series LLC v. Caring Voice Coalition, Inc.*, No. 20-cv-11418 (D. Mass. Filed July 27, 2020) ("Massachusetts Action"). [ECF No. 1].

2. In the Massachusetts Action, on November 10, 2020, the parties submitted, a Joint Motion to Extend Defendant United Therapeutics Corporation's Time to Respond where the Plaintiffs "consented to an extension of sixty (60) days for UT to answer or respond to their Complaint under Federal Rule of Civil Procedure 12 or otherwise, until and through January 12, 2021." [ECF No. 9 at 2].

3. On December 9, 2020, UT filed its Motion to Transfer Venue to the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. §1404(a). [ECF No. 12].

4. On December 15, 2020, UT filed a motion seeking to extend the deadline to answer or respond to Plaintiffs' Complaint "until 21 days following the Court's ruling on the pending motion to transfer . . ." [ECF No. 12 at 5].

5. On December 23, 2020, Plaintiffs responded to UT's motion to extend, explaining that Plaintiffs have already agreed to an additional 21 days—in addition to the previously agreed upon 60 days (for a total of 81 days)—for UT to file an answer or respond to Plaintiffs' Complaint. [ECF No. 19 at 4].

6. On January 5, 2021, the Massachusetts District Court denied UT's motion to extend the deadline to answer or respond to Plaintiffs' Complaint. [ECF No. 35 at 2, ¶ 8].

7. On January 7, 2021, again, at UT's request, the parties filed another joint motion where "Plaintiffs consented to an [additional] extension of fourteen (14) days for UT to answer or respond to their Complaint under Federal Rules of Civil Procedure 12 or otherwise, until

and through January 26, 2021 . . ." [*Id.* at ¶ 9]. The motion was granted on January 12, 2021. [ECF No. 36].

8. On January 26, 2021, six months *after* the initiation of this lawsuit, UT filed its Answer to the Complaint. [ECF No. 43]. UT did not file a Motion to Dismiss.

9. On February 24, 2021, the parties, including co-defendant in the Massachusetts Action, Caring Voice Coalition, Inc. ("CVC"), presented to the hearing on UT's Motion to Transfer. Due to, *inter alia,* CVC's representations that it contested personal jurisdiction in Florida, Judge Young declined to move forward with the hearing as scheduled.

10. Accordingly, the hearing on UT's Motion to Transfer was rescheduled for and took place on March 31, 2021.

11. On April 6, 2021, after extensive briefing and oral arguments, as set forth above, the Massachusetts Court ordered this case to be "transferred to the United States District Court for the Southern District of Florida as to defendant United Therapeutics only." [ECF No. 57].

12. On April 7, 2021, this Court notified Plaintiffs that additional actions needed to be taken in order for the attorneys of record to appear before the Court, including, 1) retaining local counsel, and 2) filing written applications and motions seeking pro hac vice admission before this Court. [ECF No. 61].

13. On April 26, 2021, UT filed a Motion to Reassign Case/Transfer Case to the Hon. Cecilia Altonaga. [ECF No. 71].

14. On May 10, 2021, Plaintiffs filed a memorandum opposing UT's Motion to Reassign Case/Transfer Case to the Hon. Cecilia Altonaga. [ECF No. 71]. In it, Plaintiffs informed this Court of the various tactics UT has implemented in litigation with Plaintiffs over the

course of years in an apparent attempt at "judge shopping" by continuously seeking to transfer this case (and other, unrelated cases) to different judges, or courts, while at the same time repeatedly seeking concessions to delay litigating this case on its merits. [ECF No. 75].

15. On August 25, 2021, this Court denied UT's Motion to Reassign Case/Transfer Case to the Hon. Cecilia Altonaga. [ECF No. 79]. As explained by this Court:

> Defendant requests that this case be transferred to Chief Judge Altonaga, who presided over a lower-numbered case involving the same parties and same facts. The Court does not find a sufficient basis to transfer this action as the case before Chief Judge Altonaga was voluntarily dismissed during the pleading stage of litigation and Chief Judge Altonaga did not rule on any motions.[1]

16. That same day, this Court ordered the parties to submit a Joint Scheduling Report and Proposed Scheduling Order by September 7, 2021. [ECF No. 80].

17. On September 7, 2021, pursuant to this Court's August 25th Order, the parties submitted their Joint Scheduling Report. [ECF No. 85]. The parties also sought deviation from this Court's Standard Order explaining,

> [a]s the case is presently framed and in light of the complexities of document and testimonial discovery in light of the ongoing coronavirus pandemic, the Parties suggest adoption of a complex case management track pursuant to S.D. Fla. L.R. 16.1(a)(2).

18. Accordingly, the parties *proposed*, among other things, that Plaintiffs be provided until October 15, 2021 to 1) join any additional parties (if needed) and 2) seek to amend the Complaint (if needed). The parties further proposed that Defendant also be provided until

---

[1] Ironically, and as explained in Plaintiffs' opposition to Defendant's attempt to reassign this case to Chief Judge Altonaga, since as early as November 15, 2018, even Chief Judge Altonaga had been presented with and rejected UT's attempts to remove the case previously before her involving some of the same parties. [ECF No. 75 at 3] (citing *MSP Recovery Claims Series, LLC. v. United Therapeutics Corp.*, No. 18-cv-24398-CMA (S.D. Fla. Nov. 15, 2018)).

October 15, 2021 to file its Motion for Judgment on the Pleadings. In addition, the parties proposed that fact discovery be completed by September 6, 2022 (approximately one year from now), and trial be conducted on October 9, 2023 (approximately 2 years from now). [ECF No. 85-1].[2]

19. On October 15, 2021 (the date agreed upon by the parties for Plaintiffs to join parties and/or seek an amendment of the Complaint), Plaintiffs filed their Amended Complaint and joined two additional parties to this case. In particular, the Amended Complaint included the addition of 1) Defendant, Smiths Medical, Inc., a manufacturer that conspired with UT to ensure UT maintained complete market dominance by creating artificial barriers that eliminated generic competition, thereby permitting UT to charge supra-competitive prices for their drugs, and 2) Plaintiff, Series 44 (as a class representative), a subsequent assignee of Plaintiff MSP Recovery Claims, Series LLC of assignments from various Medicare Advantage organizations ("MAO") that were injured by the Defendants' anticompetitive conduct as those MAOs were forced to pay the supra-competitive prices for UT's drugs that would have otherwise not been possible but for Defendants' anticompetitive conduct and scheme to defraud.

20. On October 21, 2021, when made aware of the oversight, Plaintiffs filed their Motion for

---

[2] Again, contrary to UT's unfounded assertions that Plaintiffs engaged in "a disruptive exercise in bad faith and gamesmanship" or that Plaintiffs "tactically concealed" their intention to amend the Complaint, the proposed scheduling order even provided for the possibility that Plaintiffs would seek to amend the Complaint. Specifically, the Joint Scheduling Report, under the heading, "Necessity of Amendment to Pleadings" states, "Plaintiffs will be guided by the deadline to amend the pleadings set forth above, unless good cause for an amendment outside the deadline is shown." [*See* ECF No. 85 at 4]. Clearly, UT's representations that there was a "dilatory motive" behind Plaintiffs' amendment in unfounded, as the opportunity to amend was specifically contemplated and stipulated to in the Joint Scheduling Order filed by the parties.

Leave to Amend Complaint—which is currently pending before this Court. [ECF No. 98].

21. Later that same day, UT filed its motion seeking to strike Plaintiffs' Amended Complaint in its entirety. [ECF No. 99].

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT UNITED THERAPEUTICS CORPORATION'S MOTION TO STRIKE
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant's Motion to Strike Plaintiffs' First Amended Class Action Complaint ("Motion to Strike") should be denied because Plaintiffs' First Amended Class Action Complaint ("Amended Complaint") was filed without delay, Plaintiffs acted in good faith in timely filing of the Amended Complaint, and Defendant is in no way prejudiced by this filing.

"Although a court has broad discretion in considering a motion to strike, the ability to strike is considered to be drastic, and is often disfavored." *United States v. Meyer*, 376 F. Supp. 3d 1290, 1295–96 (S.D. Fla. 2019), reconsideration denied, No. 18-CV-60704, 2019 WL 1977103 (S.D. Fla. Apr. 26, 2019) (citing *Kapow*, 2017 WL 5159601, at *1; *Hilson v. D'more Help, Inc.*, No. 15-cv-60155, 2015 WL 5308713, at *1 (S.D. Fla. Sept. 11, 2015); *S. River Watershed All., Inc. v. DeKalb Cty., Georgia*, 484 F. Supp. 3d 1353, 1361–62 (N.D. Ga. 2020) (citing *TracFone Wireless, Inc. v. Zip Wireless Prod., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010). "Motions to strike are disfavored and viewed as 'a drastic remedy to be resorted to only when required for the purposes of justice.'"); *Tingley Sys. Inc. v. Bay State HMO Mgmt. Inc.,* 833 F. Supp. 882, 884 (M.D. Fla. 1993) (Motions to strike are generally viewed with disfavor and are "often considered time wasters.").

As such, "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Hilson*, 2015 WL 5308713, at *1 (quoting *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D.

Fla. 2010)); *see also Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same); *Thompson v. Kindred Nursing Ctr. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (same).

Importantly, a motion to strike is not intended to "procure the dismissal of all or part of a complaint." *Hutchings v. Fed. Ins. Co.*, 2008 WL 4186994 at *2 (M.D. Fla. Sept. 8, 2008); *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699–700 (S.D. Fla. 2013) ("[M]otions to strike are not an appropriate form of dismissal of a complaint."). Generally, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *City of New York v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 354 (S.D.N.Y. 2016) (citation omitted).

## ARGUMENT

UT raises various arguments in this Rule 12(f) Motion to Strike. Particularly, UT argues, 1) Plaintiffs "tactically concealed their intent to amend" until October 15, 2021; 2) Plaintiffs had no right to amend the complaint because the "deadline to amend as of right . . . passed ten months ago" [ECF No. 99 at 8)]; 3) Plaintiffs' "tactical . . . delay" is "highly prejudicial to UT" because of the "expense, effort, and time devoted" to UT's preparation of its Motion for Judgment on the Pleadings—which was also filed on October 15, 2021 (as contemplated and agreed upon by the parties in their Joint Scheduling Order); 4) Plaintiffs "exercised a complete lack of diligence in pursuing the new claims included in their Amended Complaint," therefore "[g]ood cause does not exist here . . ." [*Id*. at 13]; and 5) Plaintiffs' Amended Complaint was the result of "undue delay, bad faith, [and] dilatory motive . . ." [*Id*. at 14]. As discussed below, each of these arguments are without merit and do not justify the "drastic" sanction of striking the Amended Complaint. *Meyer*, 376 F. Supp. at 1295–96. Defendant's Motion to Strike is improper and should be denied.

**I.   PLAINTIFFS SHOULD BE PERMITTED TO TEST THEIR CLAIMS ON THE MERITS**

The United States Supreme Court has identified four factors that a court should consider when a party files a motion for leave to amend a pleading after the applicable scheduling order deadline has passed:

> (1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Estate of Washington v. Carter's Retail, Inc.*, No. 10–cv–1136–J–32TEM, 2011 WL 2731291, at *3 (M.D. Fla. July 13, 2011) (citing *Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)). Each of these factors weigh in Plaintiffs' favor here.

### A. Defendant Was Not Prejudiced

The first factor weighs in favor of Plaintiffs because Defendant cannot establish that it suffered any prejudice by Plaintiffs' four-day delay in filing their motion for leave to amend the pleadings. In fact, the only argument Defendant asserted with regards to this factor is,

> There is no other explanation for this behavior, which has needlessly prejudiced UT, consumed the resources of both UT and the Court, and caused UT to incur additional and unnecessary expenses. Even setting aside the wasted costs associated with the Motion for Judgment on the Pleadings, the Amended Complaint would significantly complicate the issues in this case with an entirely unrelated antitrust case, to UT's detriment.

[ECF No. 99 at 15]. Defendant's generic statement that it suffered *harms*, *waste* and *prejudice* is unpersuasive given that Defendant provides no factual support for these claims.

First, any costs associated with the Motion for Judgment on the Pleadings were costs that would have been incurred whether Plaintiffs filed their Motion for Leave to Amend the Pleadings contemporaneous with the filing of their Amended Complaint on October 15, 2021, or at some point thereafter. The parties stipulated and jointly proposed an order setting October 15, 2021 as the date for 1) Plaintiffs to move to amend the Complaint, and 2) Defendants to file their Motion

for Judgment on the Pleadings. Any costs associated with Defendants' Motion for Judgment on the Pleadings are not costs incurred as a result of Plaintiffs' conduct but are costs Defendants would have incurred anyway. UT can hardly argue that it would ***not*** have filed its Motion for Judgment on the Pleadings in reliance on Plaintiffs' aspirational assertion that they intended amend the complaint.

In addition, Defendant was not prejudiced by the late filing of the Motion to Amend, as the actual Amended Complaint was filed in advance of the Motion deadline, putting Defendant on notice of Plaintiffs' restructured claims. *See Nova Bank v. Musser*, No. 11-cv-81311, 2012 WL 13019187 (S.D. Fla. Apr. 5, 2012) (order denying motion to strike and granting leave to amend where the amended complaint was filed absent leave of court but otherwise timely and defendant was not unduly prejudiced, opining that "the Court prefers to adjudicate cases on the merits rather than procedural technicalities.").

UT's argument that it would suffer a "detriment" from having to defend against the antitrust allegations in the Amended Complaint is not the kind of prejudice that would preclude the relief Plaintiffs seek. For example, as explained in *Monroe v. McDonald's Rests. of Fla., Inc.*, No. 4:10CV490-RH/WCS, 2011 WL 13238373, at *1 (N.D. Fla. July 21, 2011),

> Having to defend new claims on the merits—without any impairment in the ability to do so and even without any duplication of effort—is not the kind of prejudice that warrants denying leave to amend. When, as here, a defendant will be able to defend the new allegations as fully and fairly as it would have been able to do had the allegations been asserted in the original complaint, then the plaintiff's failure to make the allegations originally—that is, the plaintiff's proffering of the allegations in the amended complaint instead of in the original complaint—causes the defendant no substantial prejudice.

Simply put, UT's assertions that it was prejudiced lack merit and should be disregarded.

### B. *Any Impact on Defendant was De Minimis*

The second factor (the length of the delay and its potential impact on the judicial proceedings), also weighs in Plaintiffs' favor. Here, any minimal delay had little impact on judicial proceedings, other than the briefing on UT's filing of this Motion to Strike. Pursuant to Local Rule 5C, in order to seek leave to amend a complaint, Plaintiffs were required to file the actual proposed Amended Complaint, along with a motion seeking leave from this Court. Pursuant to this Court's Scheduling Order, Plaintiffs were required to move to amend their Complaint by October 15, 2021. Plaintiffs timely filed their proposed Amended Complaint by that date, but inadvertently failed to file a motion seeking leave to amend until four-days later. UT has not identified any detrimental impact on judicial proceedings caused by this minimal delay—as there is none. This factor also weighs in Plaintiffs' favor.

### C. *Plaintiffs Acted in Good Faith*

With regards to the third factor (the reason for the delay) and fourth factor (whether the movant acted in good faith), those factors also weight in Plaintiffs' favor. Plaintiffs' delay was due to an inadvertent failure to file a motion for leave on the same date that Plaintiffs filed their Amended Complaint. Contrary to the inflammatory rhetoric in UT's Motion to Strike, at all times Plaintiffs conduct was in good faith.

> The Supreme Court has held that, absent bad faith, leave to amend should be freely given.
>
> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed* undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

Here, there is no evidence that the filing of the Amended Complaint was the result of "undue delay, bad faith or dilatory motive," or any other factor enumerated by the Supreme Court in *Foman*. As discussed above, most, if not all, of the delay that has occurred to date in this case was the result of UT's continuous attempts to forum shop and seek extensions, thus delaying the litigation of this case on its merits.

Again, Plaintiffs never acted in bad faith or with a dilatory motive. Rather, Plaintiffs worked diligently to determine whether the original Complaint required amending—as contemplated by the parties in their Joint Scheduling Order. Given the fact that the original Complaint was filed in the District of Massachusetts, and drafted toward a different jurisdictional standard, and in accordance with *stare decisis*, many hours were invested making this determination. Plaintiffs then worked diligently to amend the Complaint to include additional allegations, theories of liability, one defendant (Smiths), and one class representative (Series 44). Plaintiffs filed the Amended Complaint by the Court's deadline. Plaintiffs' failure to file a motion for leave to amend contemporaneous with the Amended Complaint was certainly not due to "undue delay, bad faith, or dilatory motive," but rather, it was due to inadvertence or mistake.

As explained by the court in *Landi v. Home Depot USA, Inc.*, 2018 WL 11344398, at *2 (M.D. Fla. Dec. 10, 2018):

> the Court applies the good cause and excusable neglect standards found in Rules 6 and 16 in determining whether to grant an untimely motion for leave to amend a pleading. *See* Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")…
>
> …Furthermore, with regard to excusable neglect, this Court has recognized that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, …" *Estate of Washington*, 2011 WL 2731291, at *2 (quoting *Pioneer Inv. Servs.*

> *Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). The determination of whether a party has established excusable neglect "is at bottom an equitable one." *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.

The *Landi* Court then determined that the Motion for Leave to Amend the Complaint filed five days late was the result of "inadvertence, mistake, or carelessness" of the party and, because discovery was still ongoing, the *Landi* Court granted the motion and permitted the plaintiff to amend the complaint.

The same conclusion was reached by the court in *Salem Homes of Fla., Inc. v. Res-Care Inc.*, No. 3:19-CV-333-J-39MCR, 2020 WL 11362262, at *9 (M.D. Fla. Mar. 30, 2020) where the court denied the defendant's motion to strike the amended complaint filed out of time and without court leave because, 1) "discovery had not begun," 2) the case did not "involve any repeated failures to cure deficiencies or undue delay," 3) the amendment would not prove futile, and 4) courts have a "strong preference that cases be heard on the merits . . ." *See also Wiand v. Buhl*, No. 8:10-CV-75-T-17MAP, 2011 WL 6048829, at *2 (M.D. Fla. Nov. 3, 2011), report and recommendation adopted, No. 8:10-CIV-75-T-17-MAP, 2011 WL 6048741 (M.D. Fla. Dec. 6, 2011) (Denying the defendant's motion to strike an amended complaint filed out of time in light of the early stage of the case and "the severity of striking a complaint in its entirety under Rule 12(f) . . .").

At this stage in the proceedings, Plaintiffs' amendment has no substantial impact on the timing of this case. This Court's Scheduling Order was entered recently. The parties have yet to engage in discovery or any substantial motion practice. Discovery is not set to conclude until September 2022 (approximately one year from now). Trial is not set to occur until October 2023 (approximately two years from now). With respect to the factors identified by the Supreme Court in *Foman,* there is no evidence of "undue delay, bad faith or dilatory motive on the part of the

movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . ."

As explained above, Plaintiffs' filing of the Amended Complaint without an accompanying motion for leave was inadvertent, and it was certainly not an "obvious tactical decision made in bad faith," as argued by UT. [ECF No. 99 at 15]. The drastic sanction sought by Defendant to strike an entire theory of liability and two parties (including one class representative) from this case is simply not appropriate under the circumstances of this case and this Court should deny Defendant's motion in its entirety.

## II. DEFENDANT FAILS TO ESTABLISH UNDUE PREJUDICE SUFFICIENT TO JUSTIFY THE DRASTIC SANCTION IT SEEKS

UT's arguments are contradictory. On one hand, UT argues that permitting Plaintiffs to file the Amended Complaint would be highly prejudicial given the time and expense invested in its Motion for Judgment on the Pleadings, while simultaneously arguing that the Amended Complaint should be dismissed for the reasons outlined in the very same motion. [ECF No. 99 at 16 – Defendant's assertion that "the Amended Complaint adds nothing of value to the existing RICO claims. Nor does it address the host of defects described at length in UT's Motion for Judgment on the Pleadings."].[3] Defendant cannot have it both ways.

UT cannot feign shock that Plaintiffs amended their complaint. The parties ***jointly*** agreed on October 15, 2021, as the deadline for 1) "Joinder of any additional parties and filing of motions to amend the complaint" and 2) any "Motion for judgment on the pleadings to be filed by." *Id*. Given the fact that both motions were to filed by October 15, 2021, it is difficult to conceive how Plaintiffs' inadvertent failure to file a motion to leave contemporaneously with the Amended Complaint resulted in additional time and expense for UT to prepare and file its Motion for

---

[3] It should be noted that Defendant's Motion for Judgment on the Pleadings was filed on October 15, 2021 at 10:18 p.m. (several hours after Plaintiffs filed their Amended Complaint).

Judgment on the Pleadings.

Second, UT's assertion that Plaintiffs' Amended Complaint is futile and would be subject to dismissal based on the arguments raised in its Motion for Judgment on the Pleadings further rebuts the contention that UT was "highly prejudiced" by Plaintiffs' inadvertent failure to attach a Motion for Leave to the Amended Complaint. This argument makes apparent that UT intends to rely on the same arguments in support of dismissal of the Amended Complaint—thus, based on UT's own admission, the time and expense UT spent preparing their Motion for Judgment on the Pleadings was not for naught.

It is well settled law that, in order to strike an untimely filed amended complaint (or motion for leave), the moving party must demonstrate that it suffered prejudice "*from the delay*, not from having to continue to litigate the case." See e.g., *Estate of Washington*, 2011 WL 2731291, at *2 (quoting *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009) (granting motion to extend time to amend complaint and motion to amend complaint to add a party and finding that defendants suffered no "discernable prejudice" because motion was filed only one day late and because discovery was still ongoing); *Landi*, 2018 WL 11344398, at *2 (same); *see also Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1217 (11th Cir. 2004) ("Even if the plaintiff's actions did constitute undue delay, the defendant has not alleged any real prejudice resulting from the delay and it is doubtful that it could. It is true that prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial.").

Plaintiffs' Amended Complaint is compatible with, and complementary to, the operative Complaint. UT's argument that the Amended Complaint is incompatible with the original

Complaint is defeated by a cursory review of the paragraphs, parties, and claims added in the Amended Complaint. The additions are consistent with, and offer further support for, Plaintiffs' contention that health care plans were victims of UT's scheme to defraud and anticompetitive conduct and suffered injuries by either 1) paying for drugs that they would have not otherwise paid for, or 2) paying much more than they would have paid but for defendants' conduct.

Lastly, to briefly address UT's assertion that permitting the filing of the Amended Complaint would be unfairly prejudicial because of the expense of litigating additional theories of liability, it should be noted that Plaintiffs (and the class they seek to represent) sustained injuries, *inter alia*, when paying for UT drugs at artificially inflated prices. As such, defendants will be held accountable for the damages caused by their illegal conduct in this action or another. *See, e.g.*, *Hayes Healthcare Servs., LLC v. Meacham*, 331 F.R.D. 441, 443 (S.D. Fla. 2019) (granting leave to file amended complaint out of time due to the "interests of justice served by allowing Plaintiffs an opportunity to test [their] claims on the merits," and due to the plaintiffs' ability to file "a separate action against [the same defendant] based on the same set of facts at issue in this case.") (citing *Foman,* 371 U.S. at 182). Given UT's inability to demonstrate any prejudice—let alone undue prejudice—in its Motion, the drastic relief they seek should be denied.

## CONCLUSION

**WHEREFORE,** based on the foregoing, Plaintiffs respectfully request that this Court **DENY** Defendant's motion in its entirety and for all such further relief as this Court deems just and proper.

Dated: November 4, 2021                               Respectfully submitted,

/s/: *Eduardo Bertran*
Eduardo Bertran, FL Bar. No. 94087
ARMAS BERTRAN ZINCONE
4960 SW 72nd Ave., Ste 206

Miami, FL 33155
ebertran@armaslaw.com


Shereef H. Akeel (MI Bar No. P54345)
Hasan Kaakarli (MI Bar No. P81099)
Adam Akeel (MI Bar No. P81328)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 420
Troy, MI  48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
adam@akeelvalentine.com
(Admitted *pro hac vice*)

Michael O. Mena (FL Bar No. 010664)
John W. Cleary (FL Bar No. 118137)
MSP RECOVERY LAW FIRM
2701 South Le Jeune Road
Coral Gables, Florida 33134
(305) 614-2222
serve@msprecoverylawfirm.com
mmena@msprecoverylawfirm.com
jcleary@msprecoverylawfirm.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2021, I filed the foregoing document with this Court using the CM/ECF filing system. This system sends notifications of such filing and service to all counsel of record.

/s/:  *Eduardo Bertran*